UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BEN SMITH as the Personal Representative for the ESTATE OF MATTHEW S. SMITH; and BEN SMITH and NONA Smith, individually, as the parents of MATTHEW S. SMITH,<br><br>Plaintiffs,<br><br>v.<br><br>PIERCE COUNTY; NAPHCARE, INC.; TAE KIM, R.N.; and NANDI BRUMIDGE, N.P.,<br><br>Defendants. | CASE NO. C16-5667 BHS<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS |

This matter comes before the Court on Defendant Pierce County's (the "County") motion to dismiss (Dkt. 17). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On July 29, 2016, the Estate of Matthew S. Smith (the "Estate"), Ben Smith ("Mr. Smith") and Nona Smith ("Mrs. Smith") (collectively "Plaintiffs") filed their complaint.

ORDER - 1

Dkt. 1. On August 29, 2016, the County filed a motion to dismiss. Dkt. 17. On September 19, 2016, Plaintiffs responded. Dkt. 18 On September 23, 2016, the County replied. Dkt. 19.

## II. FACTUAL BACKGROUND

On August 27, 2015, Matthew Smith ("Smith") was arrested and booked into Pierce County Jail. Dkt. 1 at 6. Smith was 47 years old. *Id.* When Smith was booked into Jail, the County Jail's medical providers knew Smith suffered from Crohn's, a potentially dangerous disease. *Id.* at 7.

After his arrival, Smith began to experience symptoms of his disease. *Id.* As the symptoms worsened, Smith made multiple requests for medical treatment. *Id.* at 7–8. After approximately four weeks of worsening symptoms, Smith was eventually transported to a hospital for emergency care. *Id.* Smith was eventually discharged and the County was given instructions that he must have a follow-up appointment with a specialist at the University of Washington. *Id.* at 9. The County was also instructed that if Smith "was unable to see his doctor [at UW] for any reason or if [he] feel[s] worse in any way prior to [his] follow up appointment, please return to the emergency department. Worsening symptoms include but are not limited to increased pain, fever, or any new or concerning symptom." *Id.*

After Smith was discharged from the hospital, his symptoms continued to worsen. *Id.* at 9–10. On October 2, 2015, Smith notified the jail staff that he was suffering from severe dehydration and symptoms of dizziness, aches, and cramps. *Id.* at 9. On October 3, 2015, he complained of severe worsening pain, diarrhea, and vomiting. *Id.* On October 5,

2015, Smith complained of increasingly worse "nausea, vomiting, cramping, abdominal pain, diarrhea, frequent belching, and vomiting more than once each hour." *Id.* at 9–10. He reported he had been unable to urinate in 36 hours. *Id.* at 10. On October 7, 2015, the jail medical staff received lab results indicating that Smith's health was in a state of emergency. *Id.* at 10. Despite the repeated indication that Smith's symptoms were worsening, he was not returned to the hospital emergency room or taken to any other acute care facility. *Id.* at 9–11.

On October 9, 2015, a corrections officer responded to an emergency call light and found Smith lying on his cell floor in severe pain, barely able to walk or stand. *Id.* at 11. Rather than transport Smith to a hospital, defendants ordered correctional staff to bring him to the jail's medical clinic in a wheelchair. *Id.* Smith died on the floor of the jail's clinic while awaiting medical treatment for over six hours. *Id.* at 11–12.

## III. DISCUSSION

**A.  12(b)(6) Standard**

Motions to dismiss brought under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under such a theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295, 1301 (9th Cir. 1983). To survive a motion to dismiss, the complaint does not require detailed factual allegations but must provide the grounds for entitlement to relief and not merely a "formulaic recitation" of the elements of a cause

of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

"As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks omitted). The Court, however, may consider documents not attached to the complaint "if the documents' authenticity . . . is not contested and the plaintiff's complaint necessarily relies on them." *Id.* (internal quotation marks omitted). Also, "under Fed. R. Evid. 201, a court may take judicial notice of matters of public record." *Id.* at 689 (internal quotation marks omitted).

**B.**     **Mr. Smith's Standing on Behalf of Estate as Personal Representative**

The County appears to argue that Mr. Smith lacks standing to pursue a § 1983 claim on behalf of the Estate. State survival statutes will control the survival of § 1983 claims so long as the statutes are not "inhospitable to survival of § 1983 actions . . . [and] ha[ve] no adverse effect on the policies underlying § 1983." *Robertson v. Wegmann*, 436 U.S. 584, 594 (1978). *See also Byrd v. Guess*, 137 F.3d 1126, 1131 (9th Cir. 1998) *abrogation on other grounds recognized by Moreland v. Las Vegas Metro. Police*, 159 F.3d 365, 369–70 (9th Cir. 1998) ("[S]urvival actions are permitted under § 1983 if authorized by the applicable state law."). Under Washington's general survival statute, "[a]ll causes of action by a person or persons against another person or persons shall survive to the personal representatives of the former and against the personal representatives of the latter." RCW 4.20.046. Therefore, acting as the personal

representative, Mr. Smith has standing to pursue any cognizable § 1983 claim on behalf of the Estate.

The County nonetheless argues that the Estate's claim must fail because Washington's general and special survival statutes require that "parents be dependent for support on a deceased adult child in order to recover." Dkt. 17 at 10 (quoting *Philippides v. Bernard*, 151 Wn.2d 376, 388 (2004)). Other courts in this district have rejected this argument. *Ostling v. City of Bainbridge Island*, 872 F. Supp. 2d 1117, 1124–25 (W.D. Wash. 2012); *Harms v. Lockheed Martin Corp.*, C06-572JLR, 2007 WL 2875024, at *5 (W.D. Wash. Sept. 27, 2007). The County's argument misconstrues the language in RCW 4.20.046 that "the personal representative shall only be entitled to recover damages for pain and suffering, anxiety, emotional distress, or humiliation personal to and suffered by a deceased on behalf of" parents and siblings "who may be dependent upon the deceased person for support." RCW 4.20.046, .020. This language does not deprive a personal representative of standing to bring a claim on behalf of the estate; rather, it limits the availability of non-economic damages for such a claim. *Harms*, 2007 WL 2875024 at *5.

Moreover, this limitation on non-economic damages does not apply in survival § 1983 claims. In a well-thought decision from this district, Judge Leighton found that the "policies [underlying § 1983] compel the Court to hold that the restriction of non-economic damages in Washington's survival statute undermines the purpose of § 1983 and must therefore be disregarded." *Ostling*, 872 F. Supp. 2d at 1126. The Court adopts Judge Leighton's reasoning in *Ostling* and finds that Washington's survival statute can not preclude non-economic damages in a § 1983 claim by a decedent's estate.

C.     **Parents' Individual Standing for § 1983 Claims**

The County also moves to dismiss Mr. and Mrs. Smith's individual § 1983 claims on the basis that Mr. and Mrs. Smith lack standing. To support its argument, the County cites *Byrd* for the principle that "survival actions are permitted under § 1983 if authorized by the applicable state law." 137 F.3d at 1131. Under the County's interpretation, this means that surviving parents must possess standing under the state survival and wrongful death statutes in order assert any § 1983 claim associated with the death of a child. However, the language from *Byrd* upon which the County relies addressed a parent's "standing to assert the violation of [the decedent]'s Fourth Amendment rights." *Byrd*, 137 F.3d at 1131. This is similarly true of the language upon which the County also relies from *Smith v. City of Fontana*, 818 F.2d 1411, 1417 (9th Cir. 1987), *overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999) ("Mr. Smith's children, suing in their individual capacities, also assert a claim for relief under the Fourth Amendment. However, the Supreme Court has held that 'Fourth Amendment rights are personal rights which . . . may not be vicariously asserted.'") (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969)). A complete reading of *Bryd* indicates that, under § 1983, Fourteenth Amendment claims for parents' individual rights are cognizable and governed by a separate standard than vicarious Fourth Amendment claims that must be brought appropriately by a decedent's estate. *See* 137 F.3d at 1133–34.

In contrast to the vicarious Fourth Amendment claims addressed by the authority cited above, Mr. and Mrs. Smith allege claims for the deprivation of their own Fourteenth

Amendment right to the companionship and society of their son. The Ninth Circuit "has recognized that parents have a Fourteenth Amendment liberty interest in the companionship and society of their children." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010). "Parents and children may assert Fourteenth Amendment substantive due process claims if they are deprived of their liberty interest in the companionship and society of their child or parent through official conduct." *Lemire v. California Dept. of Corrections and Rehabilitation*, 726 F.3d 1062, 1075 (9th Cir. 2013). *See also Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991) (citing *Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986); *Kelson v. City of Springfield*, 767 F.2d 651, 653–55 (9th Cir. 1985)); *Byrd*, 137 F.3d at 1133 (recognizing "the Fourteenth Amendment liberty interests of a mother and wife in the society and companionship of the deceased."). "[O]nly official conduct that 'shocks the conscience' is cognizable as a due process violation." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). "A [jail] official's deliberately indifferent conduct will generally 'shock the conscience' so as long as the [jail] official had time to deliberate before acting or failing to act in a deliberately indifferent manner." *Lemire*, 726 F.3d at 1075.

In its reply, the County argues, in essence, that the prevailing Ninth Circuit precedent is bad law. Dkt. 19 at 4–5. The County indicates that the Supreme Court has remained silent on whether a parent may maintain an individual § 1983 substantive due process claim resulting from the death of an adult nondependent child. *Id*. Indeed, "the Supreme Court cases [addressing the parental liberty interest] focus on securing the rights of parents to have custody of and to raise their *minor* children in a manner that develops

parental and filial bonds free from government interference." *Butera v. D.C.*, 235 F.3d 637, 655 (D.C. Cir. 2001) (internal quotation omitted). *See, e.g.*, *Troxel v. Granville*, 530 U.S. 57, 66 (2000) ("[W]e have recognized the fundamental right of parents to make decisions concerning the care, custody, and control of their children."). Accordingly, "the Courts of Appeals are divided on the issue of whether the Due Process Clause protects a parent's right to the companionship of his or her adult son." *McCurdy v. Dodd*, 352 F.3d 820, 828 (3d Cir. 2003).

Examining the Ninth Circuit line of cases, it could be argued that a parent's right to sue under § 1983 based on the loss of society and companionship of an adult nondependent child is an improper exaggeration of the well-established right to direct the care, custody, and control of dependent children. In *Kelson*, the Ninth Circuit held that a fourteen-year-old boy's suicide while under the supervision of school officials implicated a § 1983 claim for interference with "a constitutional right to the maintenance of a parent-child relationship." 767 F.2d at 654. In reaching its conclusion, the Ninth Circuit relied on various authorities recognizing a parent's liberty interest in the care, custody, and control of *minor dependent* children. *Kelson*, 767 F.2d at 653–55 (citing *Morrison v. Jones*, 607 F.2d 1269 (9th Cir. 1979), *cert. denied*, 445 U.S. 962 (1980) (deprivation of parental rights where state removed mentally-ill, alien, minor child to Germany); *Little v. Streater*, 452 U.S. 1 (1981) (holding an indigent defendant in a paternity proceeding brought by the state has a Fourteenth Amendment due process right to receive blood grouping tests to establish paternity for newborn child); *Lassiter v. Department of Social Services*, 452 U.S. 18 (1981) (holding the parent of a minor is entitled to due process in

state initiated proceeding to terminate parental status); *Santosky v. Kramer*, 455 U.S. 745 (1982) (same); *Mattis v. Schnarr*, 502 F.2d 588 (8th Cir. 1974) (father whose minor son was shot and killed while attempting to escape arrest had § 1983 claim under the due process clause of Fourteenth Amendment) .

The *Kelson* decision also relied on *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984), which held that a father could claim a due process deprivation for the death of his nondependent 23-year-old son; but *Bell* was subsequently overruled. *See Russ v. Watts*, 414 F.3d 783, 790 (7th Cir. 2005) ("Our finding . . . in *Bell* was not appropriately moored to Supreme Court precedents establishing the contours of the parental liberty interest. The decisions on which we relied as indicating that [a] father possessed a constitutional liberty interest in his relationship with his [adult] son all dealt with the right to procreate and make decisions about rearing one's minor children without state inference.") (quotation marks omitted).

Subsequently, in *Strandberg*, the Ninth Circuit relied on *Kelson* to bifurcate the parental liberty interest into separate rights to (1) raise minor children and (2) enjoy the companionship and society inherent to a parent-child relationship. 791 F.2d at 748 n.1. Under this approach, the Ninth Circuit found that parents could bring § 1983 claims for Fourteenth Amendment violations based on the death of their 22-year-old son while in jail. *Id*. at 748. Later, in *Curnow*, the Ninth Circuit cited *Kelson* and *Strandberg* and allowed parents to pursue § 1983 claims based on the Fourteenth Amendment after the fatal shooting of their adult son by police. 952 F.2d at 325. Since *Curnow*, the Ninth Circuit has consistently recognized that § 1983 claims may proceed under the theory that

the Fourteenth Amendment protects the right to the companionship and society between parents and their adult children. *Lemire*, 726 F.3d at 1075 (citing *Wilkinson*, *Curnow*, and *Moreland*); *Wilkinson*, 610 F.3d at 554–55 (citing *Curnow*); *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004); *Lee v. City of Los Angeles*, 250 F.3d 668, 685–86 (9th Cir. 2001) (citing *Kelson*); *Moreland*, 159 F.3d at 371 (citing *Curnow*); *Byrd*, 137 F.3d at 1134 (citing *Curnow*); *Ward v. City of San Jose*, 967 F.2d 280, 283 (9th Cir. 1992).

This Court is not the first district court to consider the evolution of the parent-child right to society and companionship in the Ninth Circuit. In *Rentz v. Spokane Cty.*, 438 F. Supp. 2d 1252 (E.D. Wash. 2006), Judge McDonald (who also authored the *Curnow* opinion while sitting by designation) offered a careful examination of the Ninth Circuit's *Strandberg-Curnow* line of cases. There, Judge McDonald allowed the parents' § 1983 claims to proceed, stating: "the development of this precedent in the Ninth Circuit, even be it inadvertent and/or not particularly well thought out under Supreme Court precedent, is nonetheless binding authority upon this district court." 438 F. Supp. 2d at 1265.

Here, the Court reaches the same conclusion. This Court is bound to apply the prevailing law of the Ninth Circuit. *See Close v. Pierce Cty.*, CV-09-05023RBL, 2009 WL 3877598, at *4 (W.D. Wash. Nov. 18, 2009) ("This Court cannot and will not overrule Ninth Circuit precedent on this point. The Plaintiffs' 14th Amendment claim will not be dismissed on the basis that this Circuit should not recognize it."). Although the Ninth Circuit's *Strandberg-Curnow* line of cases arguably overexpanded the parental interest recognized by the Supreme Court, the Supreme Court authority does not necessarily contradict the Ninth Circuit. Therefore, Mr. and Mrs. Smith may bring § 1983

substantive due process claims for the loss of society and companionship of their adult nondependent son. They need not show standing under state survival and wrongful death statutes to bring claims for an alleged violation of their own constitutional rights. *See Ostling*, 872 F. Supp. 2d at 1127.

### D.     Municipal Liability

The County also moves to dismiss Plaintiff's § 1983 claims against it on the basis that the allegations in the complaint do not support a theory of municipal liability. Dkt. 17 at 4–9.

"While local governments may be sued under § 1983, they cannot be held vicariously liable for their employees' constitutional violations." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013). To state a claim against a municipality under § 1983, a plaintiff must allege sufficient facts to support a reasonable inference that the execution of a policy, custom, or practice was the "moving force" that resulted in the deprivation of his constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–92 (1978).

There are three established scenarios in which a local government may be liable for constitutional violations under § 1983. "First, a local government may be held liable 'when implementation of its official policies or established customs inflicts the constitutional injury.'" *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2012) (quoting *Monell*, 436 U.S. at 708). Second, Plaintiff can prevail on a § 1983 claim against the County by identifying acts of omission, such as a pervasive failure to train its employees, "when such omissions amount to the local government's own official

policy." *Id*. Finally, the County "may be held liable under § 1983 when 'the individual who committed the constitutional tort was an official with final policy-making authority' or such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Clouthier*, 591 F.3d at 1250 (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992) (internal quotation marks and citations omitted)).

"A 'policy or custom' must generally be one adopted and expressly set forth, but a municipal policy 'may [also] be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded.'" *Morales v. Fry*, C12-2235-JCC, 2014 WL 1230344, at *13 (W.D. Wash. Mar. 25, 2014) (quoting *Nadell v. Las Vegas Metro. Police Dep't.*, 268 F.3d 924, 929 (9th Cir. 2001)). At the pleading stage, Plaintiff must plead "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself" and "factual allegations that . . . plausibly suggest an entitlement to relief . . . ." *See AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012). *See also Cyr v. Pierce Cty.*, C16-0430 RSM, 2016 WL 2855272, at *7 (W.D. Wash. May 16, 2016) (citing *AE ex rel. Hernandez*, 666 F.3d at 637; *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

To allege § 1983 municipal liability on a theory of failure to train, Plaintiff must allege: (1) the existing training program is inadequate in relation to the tasks the particular officers must perform; (2) the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact; and (3) the inadequacy of the training actually caused the deprivation of the alleged constitutional right. *Merritt*

*v. Cty. of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "[T]he need for more or different training [must be] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 380 (1989). "Under this standard, [Plaintiffs] must allege facts to show that the [Defendants] disregarded the known or obvious consequence that a *particular* omission in their training program would cause [municipal] employees to violate citizens' constitutional rights." *Flores v. Cty. of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) (emphasis added) (quotation marks omitted). *See also McFarland v. City of Clovis*, 163 F. Supp. 3d 798, 806 (E.D. Cal. 2016) ("Alleging that training [for arrest procedures] is 'deficient' or 'inadequate' without identifying a specific inadequacy is conclusory and does not support a plausible claim.") (citing *Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1149 (E.D. Cal. 2009)). "Absent allegations of specific shortcomings in the training . . . or facts that might place the City on notice that constitutional deprivations were likely to occur, Plaintiff [cannot] adequately [plead] a § 1983 claim . . . for failure to train." *Bini v. City of Vancouver*, C16-5460 BHS, 2016 WL 6395297, at *4 (W.D. Wash. Oct. 28, 2016).

A theory of "[r]atification . . . generally requires more than acquiescence." *Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), *rev'd in part on other grounds sub nom. City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765 (2015). "Rather, to state a section 1983 claim under a ratification theory, a

plaintiff must sufficiently allege that a policymaker 'made a deliberate choice to endorse' the . . . unlawful actions." *Diamond v. United States*, ED CV 14-01922-VBF, 2015 WL 11215851, at *9 (C.D. Cal. May 15, 2015) (quoting *Sheehan*, 743 F.3d at 1231). "When a county continues to turn a blind eye to severe violations of inmates' constitutional rights—despite having received notice of such violations—a rational fact finder may properly infer the existence of a previous policy or custom of deliberate indifference." *Henry v. Cty. of Shasta*, 132 F.3d 512, 518 (9th Cir. 1997*), as amended on denial of reh'g*, 137 F.3d 1372 (9th Cir. 1998).

The County correctly asserts that Plaintiffs fail to adequately plead a § 1983 municipal liability claim under a theory of ratification. Plaintiffs do not plead that the employees were not disciplined or that the County has deliberately endorsed the alleged wrongdoings. Nonetheless, Plaintiffs do adequately allege that the County "maintained unconstitutional policies, procedures and customs with regard to not following hospital discharge instructions on the subject of taking detainees to a hospital or acute care facility when symptoms increase, worsen or recur." Dkt. 1 at 12–14. They also adequately allege that such customs include a failure to "provide training on managing individuals who are suffering the kinds of severe and ongoing symptoms that Smith suffered from, such as diarrhea, dehydration, kidney failure and associated conditions as well as following hospital discharge instructions on the subject of taking detainees to a hospital or acute care facility . . . ." *Id.*

These allegations, on their own, could be considered conclusory and insufficient. However, they are coupled with factual allegations indicating repeated failures to

adequately address Smith's multiple requests for medical attention or transport him to an acute care facility in accordance with his hospital discharge instructions. Specifically, Plaintiffs allege that specific agents of the County inadequately responded to three of Smith's urgent requests for medical aid on October 2, 3, and 5, 2015. Dkt. 1 at 9–10. They allege that specific County agents failed to respond to lab results showing a clear medical emergency, obtained on October 7, 2015. Dkt. 1 at 10. Plaintiffs further allege that on October 9, 2015, when Plaintiff was found on his cell floor dying, defendants still refused to transport him to a hospital or acute care facility. Dkt. 1 at 11. Plaintiffs allege that all these failures were in direct contravention of hospital discharge orders issued to the County. Dkt. 1 at 8–9, 11. Finally, Plaintiffs allege that Smith died on the floor of the jail's medical clinic while awaiting medical treatment for over six hours. Dkt. 1 at 11–12.

The facts alleged in Plaintiff's complaint, coupled with the alleged policy and training deficiencies, adequately "specify the content of the policies, customs, or practices the execution of which gave rise to Plaintiffs' constitutional injuries." *Mateos-Sandoval v. Cty. of Sonoma*, 942 F. Supp. 2d 890, 899 (N.D. Cal. 2013), *aff'd sub nom. Sandoval v. Cty. of Sonoma*, 591 Fed. Appx. 638 (9th Cir. 2015), *opinion amended and superseded on denial of reh'g and aff'd*, 599 Fed. Appx. 673 (9th Cir. 2015).

Ultimately, Plaintiffs will be required to prove that Smith's alleged harm was more than a sporadic incident involving the wrongful actions of a rogue employee. *See Case v. Kitsap Cty. Sheriff's Dep't*, 249 F.3d 921, 932 (9th Cir. 2001) ("[N]or can [municipal] liability be predicated on the isolated sporadic events . . . ."); *Booke v. Cty. of Fresno*, 98 F. Supp. 3d 1103, 1128 (E.D. Cal. 2015) ("[A] plaintiff generally must show

1   other instances of peace officers violating constitutional rights in order to show

2   deliberately indifferent training.") However, Plaintiffs have adequately alleged facts to

3   support a plausible theory of municipal liability under § 1983.

### IV. ORDER

Therefore, it is hereby **ORDERED** that the County's motion to dismiss (Dkt. 17) is **DENIED**.

Dated this 4th day of November, 2016.

                          BENJAMIN H. SETTLE
                          United States District Judge